## AKERS *et al. v.* HASKINS. AKERS *et al. v.* PIERSON.

The petitions in these cases for recovery of lands showed on their faces that the petitioners did not have title, as alleged, and could not recover the property in controversy; and the court properly sustained a general demurrer in each case.

Nos. 399, 400.   FEBRUARY 16, 1918.

Actions to recover land.   Before Judge Ellis.   DeKalb superior court.   May 3, 1917.

*Westmoreland, Anderson & Smith,* for plaintiffs.

*W. O. Wilson, R. H. Jones Jr., C. L. Pettigrew,* and *W. D. Thomson,* for defendants.

BECK, P. J.   F. M. Akers, Mary C. Holmes, Jennie M. Bloodworth, and Ralph P. Akers brought their petition against Emeline P. Haskins, to recover a certain described tract of land.   The same plaintiffs in another suit brought their petition against John F. Pierson, to recover another tract of land.   These two cases were argued together, and, on the facts that determine the rights of the parties, are so nearly similar that they will be decided together. Difference in their facts affecting the merits will be pointed out. The first of them will be referred to as the case against Haskins, and the second as the case against Pierson; and the use of the names of these two defendants will generally sufficiently indicate whether we are dealing specially with the facts of one case or the other.   And the tracts of land sued for in the first and second case, respectively, will be referred to as the Haskins tract and the Pierson tract.

It is alleged in substance, in the petitions and amendments thereto, that petitioners are the owners in fee simple of the lands sued for; that on June 17, 1866, Samuel Pitts, the grandfather of petitioners, in consideration of his love and affection for his daughter, Anne Eliza Akers, the wife of John W. Akers, executed a certain instrument "giving, granting, and conveying $1500.00 in money unto the said J. W. Akers, as trustee for his wife for life, the same at the death of the said Anne Eliza to belong to

such child or children, or representative of child or children, as she might leave in life." This instrument was recorded on November 13, 1866, in the book kept for the record of deeds. On June 21, 1866, one Caper McLendon sold and conveyed to J. W. Akers, as trustee for his wife Anne Eliza Akers, a certain described parcel of land in DeKalb county, containing 20 acres; and this land was purchased by Akers with the trust money given to him by Samuel Pitts, as before stated. On October 1, 1866, Samuel Pitts executed another instrument in writing, giving and granting the sum of $2400 in money to J. W. Akers, as trustee for his wife Anne Eliza, and her children, for life. Shortly after this gift J. W. Akers invested the money in a 12-acre tract of land in DeKalb county, adjoining the 20 acres of land first mentioned. This 12-acre tract was purchased from Caper McLendon, and payment therefor was made with the money aforesaid; but J. W. Akers took no deed to this 12-acre tract. The parcel of land sued for in the Haskins suit is a part of the 20-acre tract, while that sued for in the Pierson suit is a part of the 12-acre tract. On November 17, 1875, Caper McLendon, J. W. Akers as trustee for his wife, Anne Eliza Akers, and her children, and Anne Eliza Akers "executed a tripartite instrument, which is recorded in the clerk's office of DeKalb superior court," in which instrument the deed from Caper McLendon to J. W. Akers as trustee for Anne Eliza Akers, dated June 21, 1866, above described, and conveying twenty acres of land, was referred to, and in which it was also recited that Caper McLendon thereafter sold to J. W. Akers 12 acres of land adjoining the 20 acres, but executed no deed thereto; that the deed dated June 21, 1866, was made to J. W. Akers as trustee for his wife, when it should have been to him as trustee for his wife and children, in accordance with trust deeds dated, respectively, June 17, 1866, and October 1, 1866, made by Samuel Pitts, and recorded in certain books of records specified in the clerk's office of DeKalb superior court. Said "tripartite instrument" further recited that all the land was bought from McLendon by J. W. Akers with money belonging to the trust conveyed by Samuel Pitts's trust deeds above referred to; and further recited that the instrument was executed for the purpose of curing the irregularities mentioned, and for conveying in proper form title to all the lands which the said Akers as trustee had purchased from Caper

McLendon. This "tripartite instrument" provided that Caper McLendon should make a deed to J. W. Akers as trustee for his wife and her children, in conformity to the trust mentioned. It was also recited in this instrument that Anne Eliza Akers knew of the fact that the lands referred to and purchased by J. W. Akers from McLendon were purchased with the money which came to Akers under the "trust deeds from Samuel Pitts," and that, investing the money in the lands, her husband intended to have title made to himself as trustee for his wife and children, in conformity with the terms of the trust referred to, but by mistake had the title made to himself as trustee for his wife alone. By said "tripartite agreement" Anne Eliza Akers undertook to quit-claim her interest in said lands to said J. W. Akers as trustee for his wife and children, in conformity to the Pitts trust deeds, reserving to herself such an interest as she took in such trust deeds; and Caper McLendon, in pursuance to the tripartite instrument, on November 17, 1875, executed a deed conveying to J. W. Akers, trustee for Anne Eliza Akers and her children, in conformity to the Samuel Pitts trust conveyances, the lands contained in the twenty-acre and the twelve-acre tracts. Mr. and Mrs. Akers had five children, namely, the petitioners and one other child who died unmarried some years since and before the death of the mother. Both J. W. Akers and his wife, Anne Eliza, are dead, she having died December 20, 1913. On May 31, 1879, J. W. Akers as trustee for his wife, Anne Eliza, and her children, all of them being named, executed an instrument in the form of a deed, whereby he undertook to convey in fee simple to Eliza Shelton all the lands above referred to. The defendants claim title to the lands sued for, under the conveyance to Shelton and certain other deeds whereby the title to the lands is claimed to be vested in defendants in fee simple. Copies of the instruments referred to in the petition are thereto attached. The first of these two instruments recites that the said Samuel Pitts "has this day given, granted, and conveyed, and by these presents does give, grant, and convey unto the said Akers for the use, benefit, and advantage in trust for said Anne E. Akers for life (exempt from the marital rights of the said Akers or any future husband which the said Anne E. Akers may have) for her sole and separate use, and at her death to her child or children, or representative of child or children, as she may leave

in life, to wit, $1500.00. To have and to hold the above-named money to the said J. W. Akers in trust for Anne E. Akers and her children as above specified," etc. In the instrument executed by Pitts on October 1, 1866, it is recited that "the said Samuel Pitts . . has given, granted, and conveyed . . unto the said J. W. Akers in trust for said Anne Eliza Akers and their children for life, and at her death to such child or children as they may have in life, the full sum of $2400.00. . . To have and to hold the money to him, the said J. W. Akers, in trust for the sole and separate use, benefit, and behoof of Anne Eliza Akers; the said sum of $2400.00 being additional and for the purpose and object as specified in a former deed of trust made and executed by the said Samuel Pitts to the said J. W. Akers for the use as aforesaid, and dated the 16th day of June, 1866. Provided that the said J. W. Akers may invest the said $2400.00 at all times, at his discretion, in such property as he may think best for the interest of said estate, and may change the said investment at discretion; and should said money be invested in land or other property, the said trustee is hereby authorized and empowered to sell, convey, mortgage, and bind the same at his pleasure, from time to time, to any person, natural or artificial, provided that the written consent of the said Anne Eliza Akers shall always be obtained before any such investment, mortgage, or changes of investment can be made. And the said Samuel Pitts further declares that the sum of $1500 given to said trustee in the deed made and executed on the 17th day of June, 1866, to have been given to said trustee with same powers as those first enumerated, to invest and change the investment, to sell, convey, mortgage, and bind the said estate at all times, with the written consent of the said Anne Eliza Akers, the same having been unintentionally omitted in drawing said deed."

The deed from Caper McLendon, dated November 17, 1875, referred to in the tripartite deed or agreement, recites that it is made "between Caper McLendon on the one part, and J. W. Akers, trustee for Anne Eliza Akers and her children under deeds of trust respectively of June 17, 1866, from Samuel Pitts, as recorded; . . that the said Caper McLendon, for and in consideration of the sum of $1600.00 to him in hand paid at and before the sealing and delivery of these presents, has granted . . . and doth sell and convey and confirm unto the said Akers,

trustee as aforesaid, his heirs and assigns," certain described lands. In the tripartite agreement it is recited that Anne Eliza Akers does "remise, release, and forever quitclaim to J. W. Akers, as trustee for his wife and children, the trust estate conveyed by Samuel Pitts, deceased, above mentioned, and his successors in trust, all the right, title, interest, claim, and demand she, the said Anne E. Akers, has or may have to the land mentioned in the agreement, and in the deed which follows it, to be made by Caper McLendon to J. W. Akers as trustee for his wife and children, except such an interest in the said land as she is entitled to under the trust deed creating the trust estate of which the said J. W. Akers, her husband, is the trustee for herself and children." Attached to the petition are also copies of proceedings had at chambers before the judge of the superior court of the county in which the land lies, to obtain an order for the sale of the lands referred to, by J. W. Akers as trustee.

A general demurrer to each of the petitions was sustained, and the actions were dismissed.

We are of the opinion that the judge properly sustained the general demurrer. The instruments in writing executed by Samuel Pitts, the grandfather of petitioners, by which he gave to J. W. Akers, their father, in trust for his wife and her children, the named sums of money, were intended to place in the hands of the trustee a sum of money to be invested for the cestuis que trustent. It was also intended that the wife should have a life-estate in such property as should be bought with the money thus given to the trustee, and that her children should have a remainder interest in the property, to vest after the death of the mother. And considering the two instruments in writing executed by Samuel Pitts, it is evident that the intention was that this money should be invested in land or other property, and, if circumstances should make a change of investment necessary, that the property first bought should be sold and the proceeds again invested. The trustee obtained, in proper proceedings, an order of the judge of the superior court of the county in which the land lies, allowing him to sell the property first purchased with the money given by Samuel Pitts in trust for reinvestment. And while in the paper executed by Pitts on October 1, 1866, it was stipulated that changes of investment should be by consent of Anne E., the wife

of J. W. Akers, we do not think that this divested the trustee of the right to sell, when the proper order was procured from the judge of the superior court, for reinvestment; especially in view of the fact that the deed from McLendon, conveying 32 acres of land (made up of the 20-acre and 12-acre tracts, including the lands sued for in both suits), which was executed in pursuance of a tripartite agreement to which J. W. Akers, Anne Eliza Akers, and Caper McLendon were parties, made J. W. Akers trustee for his wife and their children, generally, relatively to the property in controversy; and Anne Eliza Akers quitclaimed all of her title and interest in this land to J. W. Akers, so that he might become generally the trustee of herself and the children, relatively to the trust fund given by Samuel Pitts, or the property in which it might be invested. We do not think that this case falls within the rule laid down in *Smith* v. *McWhorter,* 123 *Ga.* 287 (51 S. E. 474, 107 Am. St. R. 85), and the decisions following the ruling there made, where land is conveyed to one as trustee for a woman for life and on her decease to her child or children, or to her child or children born of a named husband, or to such child or children as she may leave in life. In those cases there is a remainder in certain determinate property, to take effect upon the termination of the life-estate. But in the instant case the trustee took, under the instruments creating the trust, a sum of money which he was to handle for his wife and her children. In dealing with a trust in such property the trustee necessarily acted for the benefit of the children as well as the wife. If by the contemplated investments there was an increase in the value of the estate, the trustee was to account for this to the children. It was contemplated that if all instruments which are relied upon in this case, and insisted upon by the plaintiffs as well as by the defendants, be given effect, the trustee in making investments was acting for the children as well as for the wife. And, as we have said, it is not like the case decided in *Smith* v. *McWhorter,* where the trustee was to manage certain determinate property during the life of the wife, which property, without any act upon the part of the trustee, became, upon the death of the life-tenant, the property of the children. And we are of the opinion that when the order for the sale of the property which was first bought with the trust funds was granted, and the deed was executed by the trustee in pursuance of that

order, the title to the land passed to his vendee. Consequently the court did not err in sustaining the demurrer to each petition.

*Judgment affirmed. All the Justices concur.*